# IN THE COURT OF APPEALS OF IOWA

No. 21-1065
Filed October 6, 2021

**IN THE INTEREST OF J.B. and J.B.,**
**Minor Children,**

**D.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals from a district court order terminating his parental rights. **AFFIRMED**.

Shannon M. Leighty of the Public Defender's Office, Nevada, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Daniel Matasovic, attorney and guardian ad litem for the minor children.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

In this appeal, we must determine whether the record supports the termination of a father's parental rights.[1]  On our de novo review, we affirm the district court order.  Clear and convincing evidence supports a statutory ground the district court relied on, termination is in the children's best interest, and a permissive exception should not be applied.

I.      **Background Facts and Proceedings.**

The heart of this appeal concerns two boys, ages six and seven years old at the time of the termination hearing.  They came to the attention of the Iowa Department of Human Services (DHS) in late 2019 due to domestic violence between their parents, admission of marijuana use by the mother, and admission of methamphetamine use by the father.[2]  The children were formally removed from parental custody on New Year's Eve 2019 and placed with their paternal grandmother, where they remained for a full eighteen and one-half months, the length of the underlying child-in-need-of-assistance (CINA) proceeding.  No trial home placement occurred.

A founded child abuse assessment was completed on January 13, 2020, naming the father as the perpetrator of abuse for denial of critical care.  Both children were adjudicated CINA in March 2020 pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2020).  Custody was placed with the paternal grandmother under the protective supervision of DHS.

---

[1] The mother did not appear at the termination hearing, but she was represented by counsel.  She does not appeal the termination order.
[2] The mother denied the use of any other substances but later tested positive for methamphetamine in June 2020.

Disposition was entered on April 20, wherein the court found clear and convincing evidence existed to support the original grounds for adjudication. Following a permanency hearing held on August 27, 2020, the court entered an order under Iowa Code section 232.104(2)(b), continuing placement with the paternal grandmother and granting an extension of six months for reunification efforts. The court outlined specific action steps for the father, including abstaining from all mood-altering substances, participating in drug testing and treatment, and signing necessary releases. Another three months for reunification efforts was granted following a February 2021 permanency review hearing.[3]

Following the permanency review hearing, the father struggled to maintain sobriety. He failed to have a drug patch removed, reporting it was burned off at work. While he took a second drug screen in March 2021 that was negative for all substances, he failed to complete a drug screen in April. On May 4, approximately two months before the termination hearing, the father was arrested for criminal mischief, with law enforcement reporting the father exhibited signs of drug use, specifically methamphetamine.[4] Law enforcement reported the father was hitting apartment doors with a hammer, was incoherent in his statements, and "appeared to be hallucinating and kept claiming he could see people running away from us."

---

[3] This additional three months appears to have been granted due to concerns about the offer of family centered services (FCS) to the mother, as the initial FCS worker engaged in an intimate relationship with the father while providing FCS to the mother. The father sent inappropriate sexually oriented communications to the second assigned FCS worker, causing a third FCS worker to be recently assigned.

[4] This incident took place in and near an apartment complex where the father believed his former probation supervisor was located. The father also engaged in an intimate relationship with his probation supervisor during the CINA proceeding. Her employment with the Iowa Department of Corrections was terminated.

The father failed to sign a release to allow DHS to obtain the father's current treatment records. Following hearing on the State's petition for termination held on July 15, 2021, the district court terminated the father's parental rights on July 19, 2021. The father timely appealed.

## II. Standard of Review.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis.

We use a three-step analysis to review termination of parental rights. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). First, we "determine whether any ground for termination under section 232.116(1) has been established." *Id.* If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220.

### A. Whether a Ground for Termination Has Been Established.

When the court terminates parental rights on more than one statutory ground, we may affirm the court's order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. The district court concluded there were grounds for termination under Iowa Code section 232.116(1)(e) and (f). For purposes of

the father's appeal, we focus on 232.116(1)(f). Under that section, the court may terminate parental rights if:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months . . . . [And,]
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

The father does not contest the children meet the first three requirements. He argues there is not clear and convincing evidence that at the time of the termination hearing, the children could not be safely returned to his custody. We reject this argument and conclude there is clear and convincing evidence that each of the four requirements has been met under section 232.116(1)(f).

The father has been unable to adequately address a serious, pervasive substance-abuse problem. He acknowledges his use of illegal substances began at age fifteen, with daily intravenous use of methamphetamine beginning at age twenty-nine. While he has been able to achieve short periods of sobriety, he has not sustained sobriety. The father remains on probation for the domestic abuse conviction that was in part responsible for the court's initial involvement with the children. While provided over eighteen months to place himself in a position to parent his children, methamphetamine's tight grip on the father has extinguished his ability to safely parent his children. The children could not be placed in the father's custody at the time of the termination hearing without being subjected to continued adjudicatory harm.

**B. Whether the Best-Interest Framework Supports Termination.**

We next turn to whether the best-interest framework provided in section 232.116(2) supports termination. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). The "legislature has established a limited time frame for parents to demonstrate their ability to be parents." *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). "Children simply cannot wait for responsible parenting." *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) (quoting *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)).

After over eighteen months, the father has been unable to place himself in a position to provide safety and stability for his children. While brief glimpses of progress appeared, the father is no further along in his commitment to address his long-standing issue with substances than when the children were initially removed.

Both children have fully integrated into their grandmother's home. They look to their grandmother and her husband to address their needs. The grandmother has indicated a willingness to continue contact between the father and the children under her supervision. The grandmother and her husband have been approved for adoption. We conclude that termination of the father's parental

rights is in the children's best interests to provide a permanent placement in an adoptive home.

## C. Whether Any Permissive Exceptions Apply to Avoid Termination.

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *M.W.*, 876 N.W.2d at 225. Section 232.116(3) provides,

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

A finding of any of these factors allows the court to avoid terminating parental rights, but the factors "are permissive, not mandatory." *A.M.*, 843 N.W.2d at 113 (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *M.W.*, 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take

the child. The child's best interests always remain the first consideration." *C.K.*, 558 N.W.2d at 174.

The father asserts two permissive exceptions apply to the children. First, he alleges because custody is with a relative, termination of his parental rights need not be entered. Second, he alleges termination of his parental rights would be detrimental to his children due to the closeness of the relationship he shares with them.

Although the child's maternal grandmother has legal custody of the children, we decline to apply the permissive exception in section 232.116(3)(a) to avoid termination of the father's parental rights.[5] The DHS case manager recommended termination and adoption. The guardian ad litem also recommended termination of the father's parental rights. We give weight to their testimony. *See A.M.*, 843 N.W.2d at 112 ("It is significant to us that neither the third-party service providers nor the [guardian ad litem] believed [the child] could be safely returned to her parents at the time of trial.").

Additionally, we decline to apply an exception to termination based on the closeness of the father's relationship with the children. We find the grandmother's testimony telling on this point. The grandmother noted that although the father could have as much contact with the children as he wanted under their supervision, he saw them only once every one to two weeks. Given this limited contact, the bond has lessened, with the grandmother indicating that the separation was at first

---

[5] The State argues the permissive exception in 232,116(3)(a) does not apply as the grandmother does not have legal custody. However, this argument is contrary to the record.

"really hard for both of them" with the boys "crying in their beds at night." The children made improvements in their current placement. And while the grandmother noted that both children love their father and enjoy their time with him, both children expressed the separation did not bother them anymore because they know they are staying with their grandparents. We, like the district court, determine the father did not meet his burden to establish that termination of his parental rights would be detrimental to the children.[6]

**IV. Conclusion.**

A statutory ground for termination was proven by clear and convincing evidence, termination is in the children's best interest, and no permissive exception should be applied. For these reasons, we affirm the termination of the father's parental rights.

**AFFIRMED.**

---

[6] The father offered exhibits at the termination hearing but did not testify.